No. 09-1664

# United States Court of Appeals
## for the First Circuit

————————————

PEDRO LOPEZ, ET AL.,
*Plaintiffs-Appellees*,

*v.*

COMMONWEALTH OF MASSACHUSETTS, ET AL.,
*Defendants-Appellants.*

————————————

APPEAL FROM A DECISION OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

————————————

**REPLY BRIEF OF THE DEFENDANTS-APPELLANTS
COMMONWEALTH OF MASSACHUSETTS AND
PAUL DIETL, CHIEF HUMAN RESOURCES OFFICER**

————————————

MARTHA COAKLEY
*Attorney General
of Massachusetts*

Sookyoung Shin
*Assistant Attorney General*
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2052
1st Cir. No. 108199

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ...................................................................... 1

RESPONSE TO PLAINTIFFS-APPELLEES' STATEMENT OF FACTS ............ 1

I.    PLAINTIFFS HAVE ALLEGED NO FACTS SHOWING THAT
THE TRADITIONAL HALLMARKS OF AN EMPLOYMENT
RELATIONSHIP ARE MET ........................................................ 1

II.   PLAINTIFFS' DISCUSSION OF THE MERITS IS IMMATERIAL
TO THE ISSUE RAISED BY THIS APPEAL ............................... 3

ARGUMENT ......................................................................... 5

I.    THE COURT SHOULD DENY PLAINTIFFS' MOTION TO
DISMISS THIS APPEAL FOR LACK OF JURISDICTION ....................... 5

    A.    This Appeal Raises a Question of
Eleventh Amendment Immunity ........................................... 5

    B.    Plaintiffs' Reliance on the <u>Ex parte Young</u> Exception
to Eleventh Amendment Immunity Is Misplaced ................ 9

    C.    This Appeal Does Not Turn on any Disputed Issues
of Material Fact .................................................................. 11

II.   PLAINTIFFS HAVE FAILED TO SHOW THAT CONGRESS
UNEQUIVOCALLY INTENDED TO PERMIT TITLE VII
ACTIONS AGAINST THE STATES IN THE ABSENCE OF
A COMMON-LAW EMPLOYMENT RELATIONSHIP ........................... 12

    A.    Plaintiffs Concede that the Common-Law Agency Test
Governs the Meaning of "Employer" and "Employee"
Under Title VII and that the Test Is Not Met in this Case ................ 12

B.    The Legislative History Is Irrelevant to the Eleventh
      Amendment Inquiry and Does Not, in Any Event,
      Support Plaintiffs' Position ................................................................14

C.    Plaintiffs' Discussion of Prior Litigation Involving HRD
      Is Also Irrelevant to the Eleventh Amendment Inquiry ......................16

D.    The Cases Relied on by Plaintiffs Invoke Some Variation
      of the Interference Theory of Liability, Which Cannot Be
      Applied to the States ...........................................................................19

E.    Bradley and Carparts Do Not Apply to this Case ...............................25

CONCLUSION ........................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Alberty-Velez v. Corporacion de Puerto Rico Para la Difusion Publica*,
   361 F.3d 1 (1st Cir. 2004) ........................................................................12, 13, 14

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) .................................................................................2n, 11

*Association of Mexican-American Educators v. California*,
   231 F.3d 572 (9th Cir. 2000) .........................................................................20, 27

*Atascadero State Hosp. v. Scanlon*,
   473 U.S. 234 (1985).........................................................................................6, 15

*Baranek v. Kelly*,
   630 F. Supp. 1107 (D. Mass. 1986) ....................................................................23n

*Barone v. Hackett*,
   602 F. Supp. 481 (D.R.I. 1984)...........................................................................23n

*Bradley v. City of Lynn*,
   403 F.Supp.2d 161 (D. Mass. 2005) .............................................................17, 25

*Camacho v. Puerto Rico Ports Authority*,
   369 F.3d 570 (1st Cir. 2004)........................................................................passim

*Carparts Distributing Center, Inc. v. Automotive Wholesaler's
   Association of New England, Inc.*,
   37 F.3d 12 (1st Cir. 1994)....................................................................................26

*Castro v. Beecher*,
   334 F.Supp. 930 (D. Mass. 1971) ........................................................................17

*Clackamas Gastroenterology Assocs., P.C. v. Wells*,
   538 U.S. 440 (2003)..............................................................................12, 13, 22

*Community for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) ...................................................................5, 12, 22

*Cotter v. City of Boston*,
   73 F.Supp.2d 62 (D. Mass. 1999) .....................................................18

*Curran v. Portland Superintending School Comm.*,
   435 F. Supp. 1063 (D. Me. 1977) ....................................................23n

*Dellmuth v. Muth*,
   491 U.S. 223 (1989) .....................................................................14, 15

*EEOC v. City of Evanston*,
   854 F. Supp. 534 ( N.D. Ill. 1994) ...................................................23n

*Garcia v. Akwesasne Housing Auth.*,
   268 F.3d 76 (2d Cir. 2001)................................................................10

*Guardians Association v. Civil Service Commission*
   *of the City of New York*,
   630 F.2d 79 (2d Cir. 1980)................................................................22

*Gulino v. N.Y. State Educ. Dep't*,
   460 F.3d 361 (2d Cir. 2006)........................................13, 21, 22, 23

*Haddock v. Bd. of Dental Examiners of Cal.*,
   777 F.2d 462 (9th Cir. 1985) ...........................................................16

*In re Employment Discrimination Litigation*
   *Against the State of Alabama*,
   198 F.3d 1305 (11th Cir. 1999) ......................................................16n

*Mass. Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't*,
   106 F.R.D. 80 (D. Mass.), aff'd 780 F.2d 5 (1st Cir. 1985)................18

*NAACP v. Beecher*,
   371 F.Supp. 507 (D. Mass. 1974) ....................................................17

*NAACP v. Beecher*,
  679 F.2d 965 (1st Cir. 1982) ...............................................................17

*Nationwide Mutual Ins. Co. v. Darden*,
  503 U.S. 318 (1992)...........................................................13, 24, 27

*Nat'l Org. for Women v. Waterfront Comm'n of N.Y. Harbor*,
  468 F. Supp. 317 (S.D.N.Y. 1979) ......................................................16

*Nieves-Marquez v. Puerto Rico*,
  353 F.3d 108 (1st Cir. 2003) .................................................................5

*Okruhlik v. Univ. of Ark.*,
  255 F.3d 615 (8th Cir. 2001) ............................................................16n

*Owens v. Rush*,
  636 F.2d 283 (10th Cir. 1980) ...........................................................22

*Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy*,
  506 U.S. 139 (1993).......................................................5, 7n, 9, 10, 11

*Puntolillo v. N.H. Racing Comm'n*,
  375 F. Supp. 1089 (D.N.H. 1974).....................................................23n

*Ricci v. DeStefano*,
  129 S. Ct. 2658, 2678 (2009) ..........................................................3-4

*Spirt v. Teachers Insurance and Annuity Association*,
  691 F.2d 1054 (2d Cir. 1982)................................................21, 22, 23

*United States v. City of Yonkers*,
  592 F. Supp. 570 (S.D.N.Y. 1984) ................................................ 22, 23

*United States v. New Jersey*,
  1995 WL 1943013, at *1-*2 (D.N.J. Mar. 14, 1995) .........................21

*United States v. New Jersey*,
  473 F. Supp. 1199 (D.N.J. 1979) ......................................................21

*United States v. Nordic Village, Inc.*,
   503 U.S. 30 (1992) ..................................................................15

*Vermont Agency of Natural Resources v. United States*,
   529 U.S. 765 (2000) ..............................................................6, 7

*Vulcan Pioneers, Inc. v. N.J. Dep't of Civil Serv.*,
   832 F.2d 811 (3d Cir. 1987)..................................................21

*Whalen v. Mass. Trial Court*,
   397 F.3d 19 (1st Cir. 2005) ..............................................10, 11

*Wisconsin v. Ho-Chunk Nation*,
   512 F.3d 921 (7th Cir. 2008) .................................................6

**STATE CASES**

*Brackett v. Civil Serv. Comm'n*,
   850 N.E.2d 533 (Mass. 2006) ...........................................18, 19

*Pratt v. Diet*l,
   No. 09-1254 (Mass. Super. Ct. Apr. 15, 2009).................18, 19

**FEDERAL STATUTES**

42 U.S.C. § 2000e-2(k)(1) ...................................................... 3-4

42 U.S.C. § 2000e-6(a) ...................................................17, 21, 23

42 U.S.C. § 1981 .......................................................................17

42 U.S.C. § 1983 ...................................................................17, 18

**STATE STATUTES**

G.L. c. 31, § 3 ..................................................................................................19

G.L. c. 31, §§ 9-11 .......................................................................................4, 24n

## **INTRODUCTION**

Plaintiffs-appellees have offered no authority that diminishes the state defendants' showing, grounded on United States Supreme Court precedent, that this Court may properly exercise jurisdiction over this narrow, immunity-based interlocutory appeal.  Nor have plaintiffs offered any persuasive authority establishing that their claims can proceed against the state defendants in the face of the Eleventh Amendment, given that the text of Title VII unmistakably imposes liability on States only for prohibited discrimination against their own, state employees.  Plaintiffs, who are <u>municipal</u> police officers, concede that they are not the state defendants' employees under the common-law agency test and cite to no evidence that Congress intended for anything other than the common-law test to govern the meaning of "employee" in Title VII.  The Eleventh Amendment's clear-statement rule therefore bars plaintiffs' claims against both state defendants.

## **RESPONSE TO PLAINTIFFS-APPELLEES' STATEMENT OF FACTS**

## **I.    PLAINTIFFS HAVE ALLEGED NO FACTS SHOWING THAT THE TRADITIONAL HALLMARKS OF AN EMPLOYMENT RELATIONSHIP ARE MET.**

In Part B of their Statement of Facts, plaintiffs renew their reliance on the Massachusetts General Laws in an attempt to show that the Commonwealth as a whole exercises control over the employment of police officers.  <u>See</u> Pls.' Br. at 7-

15.  As discussed in the state defendants' opening brief, these statutory arguments[1]

show only that the Commonwealth regulates certain functions relating to police

officers, either to further the purposes of the civil-service system or to protect

public safety.  See State Defs.' Opening Br. at 31-34.  Plaintiffs have pointed to no

additional facts (nor could they given their concessions below) showing that the

Commonwealth meets the hallmarks of an "employer" set forth in the controlling

common-law agency test.  See id. at 25-27.  Again, the undisputed facts are:

(1) the municipal appointing authority, not HRD, "hires and pays" its police

officers; (2) "HRD does not exercise any day-to-day control over plaintiffs' work

_____

[1]  Although not required to, the Court may accept plaintiffs' statutory
characterizations as true for purposes of this appeal.  See Ashcroft v. Iqbal, 129
S.Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal conclusions.").  The
state defendants note, however, that plaintiffs' discussion contains several
inaccuracies and misleading statements.  For instance, plaintiffs assert that no
municipality has ever used its own alternative promotional examination, Pls.' Br.
at 9, but then later concede that Salem and Leominster have in fact supplemented
HRD's examination with assessment centers.  Id. at 9 n.4; see State Defs.' Opening
Br. at 8.  Plaintiffs also misrepresent that the municipal appointing authority must
select from the top three candidates on a certification list.  Pls.' Br. at 10.  As
plaintiffs acknowledge elsewhere in their brief, the selection ratio is dependent on,
among other things, the number of vacancies in a given community.  Id. at 14.  In
addition, plaintiffs claim generally that the civil-service law "cover[s]" leaves of
absences and discipline, but the statutes they cite simply provide for a right of
appeal to the Civil Service Commission from decisions made by a municipal
appointing authority.  Id. at 12.  These are just a few examples of the many
inaccuracies in plaintiffs' brief; again, however, it is not necessary for the Court to
address these issues in order to resolve this appeal.

activities"; (3) "plaintiffs obtain no financial benefit from HRD"; (4) "HRD does not train, transfer, assign work to, set work schedules for, supervise, discipline, or fire municipal police officers, and does not pay them fringe benefits, worker's compensation insurance, or ERISA benefits"; and (5) HRD "has no authority to terminate [plaintiffs'] employment." R.A. 114 ¶ 26, 114 ¶¶ 28-30, 175. These undisputed facts establish, as a matter of law, that the Commonwealth is not plaintiffs' employer under the common-law test. See State Defs.' Opening Br. at 24-31. Indeed, plaintiffs do not argue otherwise in their brief.

## II.  PLAINTIFFS' DISCUSSION OF THE MERITS IS IMMATERIAL TO THE ISSUE RAISED BY THIS APPEAL.

Part A of plaintiffs' statement of facts, which discusses the merits of the underlying complaint, see Pls' Br. at 4-7, is immaterial to whether the Eleventh Amendment bars this action from proceeding against the state defendants in the absence of a common-law employment relationship. Were plaintiffs' claims to proceed to trial, the state defendants would be prepared to show that the sergeant promotional examinations administered by the Human Resources Division ("HRD") did not violate Title VII because (1) they had no unlawful disparate impact, (2) they were job-related, and (3) there were no alternative methods of evaluation that would be less discriminatory and equally as effective in serving the employer's legitimate employment goals. See 42 U.S.C. § 2000e-2(k)(1); Ricci v.

3

DeStefano, 129 S. Ct. 2658, 2678 (2009).  In addition, contrary to plaintiffs'
unsupported assertion that "[t]he reason for the shocking disparity of minority
police sergeants is the statewide examination," Pls.' Br. at 5, it is undisputed that
there are many other factors that influence a municipal appointing authority's
promotional decisions and a candidate's chances of promotion, including job
performance, interview performance, education, specialized skills, criminal
history, and disciplinary history.  R.A. 105 ¶ 13, 113-14 ¶ 21, 175.  Plaintiffs also
fail to mention the undisputed fact that municipalities may conduct their own
promotional examination or add components to HRD's examination.  R.A. 49 ¶ 82;
Mass. Gen. Laws ch. 31, §§ 9-11.

Whether the statewide examinations had an improper adverse impact is
therefore a complex, multi-factored inquiry.  Moreover, even if plaintiffs could
demonstrate adverse impact, the state defendants dispute that there were available,
alternative testing methods that would be less discriminatory and equally as
effective in serving the employer's legitimate employment goals.  See Ricci, 129
S. Ct. at 2678.  All of these issues would be relevant to the state defendants'
liability if this case proceeds to trial.

## ARGUMENT

I. **THE COURT SHOULD DENY PLAINTIFFS' MOTION TO DISMISS THIS APPEAL FOR LACK OF JURISDICTION.**

### A. This Appeal Raises a Question of Eleventh Amendment Immunity.

The state defendants have properly asserted a claim of Eleventh Amendment immunity, the denial of which is immediately appealable under <u>Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy</u>, 506 U.S. 139, 142-45 (1993). As discussed further below, plaintiffs have not even attempted to show that they are the state defendants' "employees" under the traditional common-law agency test.  <u>See</u> <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 751-52 (1989).  This appeal therefore raises a straightforward Eleventh Amendment inquiry:  whether Congress has unequivocally stated its intent to abrogate the States' sovereign immunity from Title VII claims brought by persons who are not employees of the State.[2]

That this inquiry requires the Court to engage in statutory interpretation does not, as plaintiffs assert, take this case out of the Eleventh Amendment realm.  As

_____

[2]  Even if there were any lingering question whether the Commonwealth is plaintiffs' employer under the common-law test, this Court has appellate jurisdiction over that question because it is "inextricably intertwined with the issue of Eleventh Amendment immunity."  <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 123 (1st Cir. 2003).

5

previously explained, resolving a claim of immunity will necessarily involve statutory interpretation because the relevant test is whether Congress has made its intent to abrogate "unmistakably clear in the language of the statute." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242 (1985); see State Defs.' Opening Br. at 20-21.  For this reason "the question whether the statute . . . permits the cause of action it creates to be asserted against States (which it can do only by clearly expressing such an intent)" will often be "logically antecedent to the existence of the Eleventh Amendment question."  Vermont Agency of Natural Resources v. United States, 529 U.S. 765, 779 (2000) (emphasis omitted).  Indeed, the questions will often have "virtual coincidence of scope," id. at 780, for "[t]he ultimate issue in the statutory inquiry is whether States can be sued under [the] statute; and the ultimate issue in the Eleventh Amendment inquiry is whether unconsenting States can be sued under [the] statute."  Id. at 779; cf. Wisconsin v. Ho-Chunk Nation, 512 F.3d 921, 929-30 (7th Cir. 2008) (question of tribal immunity was "inextricably wrapped up with the question of federal subject matter jurisdiction under the [Indian Gaming Regulatory Act]"—which was "purely a matter of statutory interpretation"—because Act only authorized suit against tribes (thereby abrogating their immunity) in certain, narrow circumstances).

　　　Plaintiffs cite no authority that supports their position that "the Commonwealth's argument is not one of sovereign immunity at all . . . but simply

6

a question of the proper interpretation of Title VII." Pls.' Br. at 18 n.6. Instead, plaintiffs argue that this Court should infer such a conclusion from the fact that Camacho v. Puerto Rico Ports Authority, 369 F.3d 570 (1st Cir. 2004), and the other cases cited by the state defendants "treated the question simply as one of statutory interpretation." Pls.' Br. at 18-19 n.6. In those cases, however, the respective state defendants did not raise Eleventh Amendment immunity, so it is no surprise that the decisions do not address the question directly. Moreover, where the statutory inquiry is "logically antecedent to the existence of the Eleventh Amendment question," the "combination of logical priority and virtual coincidence of scope" allows the courts to "decide the statutory issue first." Vermont Agency, 529 U.S. at 779. Thus, there was no need for the courts in those cases to reach the Eleventh Amendment issue once they concluded that the statutes in question contained no clear statement permitting the causes of action that were asserted against the defendants.[3] See, e.g., Camacho, 369 F.3d at 578 (Ports Authority could not be held liable as "employer" under Age Discrimination in Employment

---

[3] Likewise, there was no reason for the defendants to frame the statutory inquiry as an issue of Eleventh Amendment immunity because the purpose of the Eleventh Amendment is to confer immunity from suit. Puerto Rico Aqueduct, 506 U.S. at 145-46. Thus, once the defendants elected to proceed to trial instead of seeking interlocutory appellate review, the pertinent question on appeal from final judgment was whether they could be subject to liability under the terms of the statute.

Act because, otherwise, court would be "rewrit[ing] the [statute] despite the utter absence of any hint that Congress intended to extend liability to state agencies that merely exercise licensing and regulatory authority pursuant to a state's police power").

Plaintiffs are also incorrect that the state defendants' position would give the Commonwealth "an automatic right to interlocutory appeal" "in every Title VII case where it files a dispositive motion and loses," thereby turning the right "into a floodgate." Pls.' Br. at 19-20. The limited question posed by this appeal is whether the Eleventh Amendment even <u>permits</u> the Title VII claims that plaintiffs are raising against the state defendants; this is a fundamentally different situation from where the State raises a dispositive defense to what would otherwise be a permissible cause of action. Indeed, it is for this reason that the state defendants did not file an interlocutory appeal from the portion of the district court's order denying their statute-of-limitations defense, even though the defense could be dispositive of a large part of plaintiffs' case. R.A. 178-79.

Plaintiffs do not dispute that, if the Commonwealth is not their "employer" within the meaning of Title VII, they would not be entitled to any relief—whether monetary or injunctive—from either state defendant. <u>See</u> Pls.' Br. at 21-22. Yet at the same time, plaintiffs propose a rule that would force the state defendants to endure the burdens of trial and wait for final judgment before they could obtain

appellate review of the issue.  The Eleventh Amendment, however, confers

immunity from suit, not just protection from liability.   Puerto Rico Aqueduct, 506

U.S. at 145-46.  Thus, a district court's denial of an Eleventh Amendment claim

cannot be effectively reviewed after trial because "[t]he very object and purpose of

the [immunity is] to prevent the indignity of subjecting a State to the coercive

process of judicial tribunals at the instance of private parties."  Id. at 146

(quotation marks omitted).  Immediate appellate review is therefore proper, and

indeed required, in these circumstances.  See id. ("While application of the

collateral order doctrine in [an Eleventh Amendment] case is justified in part by a

concern that States not be unduly burdened by litigation, its ultimate justification is

the importance of ensuring that the States' dignitary interests can be fully

vindicated.").

> **B.    Plaintiffs' Reliance on the Ex parte Young Exception to Eleventh Amendment Immunity Is Misplaced.**

Contrary to the repeated assertions in plaintiffs' brief, the state defendants

are not claiming immunity from monetary damages only.  Rather, the state

defendants' claim is that the Eleventh Amendment bars this suit altogether,

regardless of the nature of the relief sought.  In this situation, if the state defendants

prevail on appeal, the Ex parte Young doctrine would not allow any of plaintiffs'

claims against them to proceed to trial.  The Ex parte Young doctrine is an

exception to Eleventh Amendment immunity that permits suits seeking to enjoin a state official from committing an "ongoing" "violation of federal law." Whalen v. Mass. Trial Court, 397 F.3d 19, 29 (1st Cir. 2005); see Puerto Rico Aqueduct, 506 U.S. at 146. Plaintiffs do not dispute that, to successfully invoke this exception, the "law under which [the plaintiff] seeks injunctive relief must apply substantively to the agency" that the official represents. Garcia v. Akwesasne Housing Auth., 268 F.3d 76, 88 (2d Cir. 2001); see State Defs.' Opening Br. at 15-16. Thus, were this Court to hold that the Commonwealth is not plaintiffs' "employer" within the meaning of Title VII, the exception would not apply, and the Eleventh Amendment would bar plaintiffs' claims, because there simply would be no violation of federal law for the district court to enjoin. Plaintiffs make no argument otherwise, see Pls.' Br. at 21-22, and so their reliance on Ex parte Young should be rejected.

Moreover, as previously discussed, the Ex parte Young exception "does not permit judgments against state officers declaring that they violated federal law in the past." Puerto Rico Aqueduct, 506 U.S. at 146; see State Defs.' Opening Br. at 16-18. Despite plaintiffs' current assertions that they are seeking various forms of prospective relief, see Pls.' Br. at 22-24, none of those requests for relief are set forth in the complaint. In fact, plaintiffs' brief concedes that the complaint seeks "appropriate declaratory and injunctive relief remedying Defendants' past acts of discrimination." Pls.' Br. at 22 (emphasis added). Because Ex parte Young is not

10

available to compensate for these alleged past injuries, plaintiffs' attempt to invoke the exception should be rejected for this additional reason.  See Puerto Rico Aqueduct, 506 U.S. at 146; Whalen, 397 F.3d at 29-30.

### C.     This Appeal Does Not Turn on any Disputed Issues of Material Fact.

Plaintiffs' last argument in support of their motion to dismiss is that this appeal is premature because it turns on unresolved issues of material fact.  See Pls.' Br. at 24-27.  Nowhere in their discussion, however, do plaintiffs identify a single material fact that is in dispute.  See id.  Again, although not required to, see Iqbal, 129 S. Ct. at 1949, the Court may take all of plaintiffs' characterizations of the General Laws as true, and they still would not create a dispute of material fact. The critical point, as explained above, is that plaintiffs have conceded facts showing, as a matter of law, that the Commonwealth is not their employer under the common-law agency test.  R.A. 114 ¶ 26, 114 ¶¶ 28-30, 175.  The immunity question is therefore properly subject to immediate review by this Court.

II.   **PLAINTIFFS HAVE FAILED TO SHOW THAT CONGRESS UNEQUIVOCALLY INTENDED TO PERMIT TITLE VII ACTIONS AGAINST THE STATES IN THE ABSENCE OF A COMMON-LAW EMPLOYMENT RELATIONSHIP.**

A.   **Plaintiffs Concede that the Common-Law Agency Test Governs the Meaning of "Employer" and "Employee" Under Title VII and that the Test Is Not Met in this Case.**

Throughout their brief, plaintiffs maintain that this appeal presents the "factual" issue of whether the Commonwealth is their employer for purposes of Title VII liability.  This is an inaccurate characterization of the Eleventh Amendment inquiry before the Court.  Plaintiffs' brief is notable in that it does not even mention, let alone apply, the common-law agency test, which requires that the "hiring party" exercise some degree of "control" over the "hired party's" daily activities in order for an employment relationship to exist.  Alberty-Velez v. Corporacion de Puerto Rico Para la Difusion Publica, 361 F.3d 1, 7 (1st Cir. 2004); see Reid, 490 U.S. at 751-52; see also Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 450 (2003) (under common-law definition, "an employer is the person, or group of persons, who owns and manages the enterprise" and who "can hire and fire employees . . . , assign tasks to employees and supervise their performance").  In light of this omission, and plaintiffs' concession that the Commonwealth does not hire, pay, or terminate municipal police officers, or have

any control over their daily work activities, there is no longer any dispute that the Commonwealth is not plaintiffs' employer under the common-law test.

Thus, in order to prevail in this appeal, plaintiffs must show that the terms "employer" and "employee" in Title VII can be read, consistent with the Eleventh Amendment, as something broader than the common-law definition. Plaintiffs' own brief, however, admits the impropriety of such a reading. As it correctly acknowledges, "nowhere did Congress indicate an intent to treat state governments differently under Title VII with respect to the jurisprudence that had arisen as to who was and who was not an employee." Pls.' Br. at 31. Thus, as courts have uniformly held, it is the common-law definition that controls. Alberty-Velez, 361 F.3d at 6-7; Camacho, 369 F.3d at 574 & n.3; Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 374 (2d Cir. 2006). Indeed, even in cases involving only private parties, courts may not construe "employee" liberally to advance the remedial purposes of a statute; rather, it must be assumed, in the absence of a contrary statutory definition, that "Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992) (common-law definition applies to term "employee" as it appears in the Employee Retirement Income Security Act); see Clackamas, 538 U.S. at 444-47 (court of appeals erred by

expanding "employee" beyond common-law definition in order to advance "the broad purpose of the" Americans with Disabilities Act) (quotation marks omitted).

This rule has particular force here because Congress must "specifically" and "unequivocal[ly]" state when and to what extent it is intending to permit a private party to bring a cause of action against a State or its agencies. Dellmuth v. Muth, 491 U.S. 223, 230-31 (1989). Title VII contains no indication that the meaning of "employer" and "employee" should be governed by anything other than the common-law agency test. Alberty-Velez, 361 F.3d at 6-7. Accordingly, because plaintiffs concede that they are not Commonwealth employees under that test, their claims against the state defendants must be dismissed under the Eleventh Amendment.

**B.    The Legislative History Is Irrelevant to the Eleventh Amendment Inquiry and Does Not, in Any Event, Support Plaintiffs' Position.**

Plaintiffs do not identify any language in Title VII that shows that Congress intended to abrogate Eleventh Amendment immunity with respect to claims asserted against a non-employer State acting in a regulatory capacity. Instead, plaintiffs rely on the legislative history of the 1972 and 1991 amendments, claiming that it evidences Congressional intent "to permit individuals to bring actions against state and local governments who used discriminatory testing methods which had a disparate impact and acted as a bar to qualified minority

14

candidates obtaining public safety positions." Pls.' Br. at 28-29. This argument
fails for two reasons.

First, plaintiffs ignore the settled principle that evidence of Congress' intent
to abrogate Eleventh Amendment immunity must be "textual." <u>Dellmuth</u>, 491 U.S.
at 230. Thus, intent cannot be inferred from the legislative history or the overall
statutory purpose or structure. <u>See</u> <u>id.</u> ("If Congress' intention is unmistakably
clear in the language of the statute, recourse to legislative history will be
unnecessary; if Congress' intention is not unmistakably clear, recourse to
legislative history will be futile, because by definition the rule of <u>Atascadero</u> will
not be met."); <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 37 (1992) ("[I]n
the Eleventh Amendment context, the 'unequivocal expression' of elimination of
sovereign immunity that we insist upon is an expression in statutory text. If clarity
does not exist there, it cannot be supplied by a committee report.") (internal
citation omitted). Plaintiffs' entire discussion of Title VII's legislative history is
therefore irrelevant to the Eleventh Amendment question before this Court. <u>See</u>
Pls.' Br. at 27-31.

Second, even if it were relevant, the legislative history does not support
plaintiffs' position. Although plaintiffs maintain that the history supports the
imposition of liability on state and local governments for use of "invalid selection
techniques," <u>id.</u> at 29, this just begs the question of whether Congress intended to
hold the States liable to anyone other than their <u>own</u> employees, and no such

15

evidence exists.  The legislative history does not even suggest, let alone clearly

state, that "in removing the exemption for state government 'employers,' Congress

intended to benefit anyone other than those <u>actually employed</u> or seeking to be

employed by state governments or their subdivisions."  <u>Haddock v. Bd. of Dental</u>

<u>Examiners of Cal.</u>, 777 F.2d 462, 464 (9th Cir. 1985) (emphasis added); <u>accord</u>

<u>Nat'l Org. for Women v. Waterfront Comm'n of N.Y. Harbor</u>, 468 F. Supp. 317,

320 (S.D.N.Y. 1979); <u>see</u> State Defs.' Opening Br. at 35-36.  Thus, the history in

no way supports plaintiffs' argument that Congress intended to permit the type of

Title VII claims asserted against the state defendants in this case.[4]

## C.    Plaintiffs' Discussion of Prior Litigation Involving HRD Is Also Irrelevant to the Eleventh Amendment Inquiry.

Plaintiffs next maintain that the state defendants' arguments "must be judged

in light of [the Commonwealth's] history spanning more than 35 years in which the

Commonwealth has been found to be liable under Title VII, and/or was intimately

involved with litigation involving hiring and promotional exams which it created,

---

[4]  The cases cited on page 31 of plaintiffs' brief are distinguishable because there was no dispute there that the State was the actual employer of the respective plaintiffs.  <u>See</u> <u>In re Employment Discrimination Litigation Against the State of Alabama</u>, 198 F.3d 1305, 1309 (11th Cir. 1999) (Title VII claims brought by minorities "who are employed, have been employed, or who may in the future be employed by" the State); <u>Okruhlik v. Univ. of Ark.</u>, 255 F.3d 615, 620 (8th Cir. 2001) (Title VII claims brought by two professors and several administrative staff against university).

16

administered, and scored." Pls.' Br. at 32. Plaintiffs fail to explain, however, why this alleged history is at all relevant to this appeal. Moreover, all of the cases they cite arose in different statutory contexts or involved different issues altogether.

In the Beecher and Castro line of cases, no individual Title VII claims were asserted. Rather, the individual claims arose under 42 U.S.C. §§ 1981 and 1983. NAACP v. Beecher, 371 F.Supp. 507, 510 (D. Mass. 1974); Castro v. Beecher, 334 F.Supp. 930, 934 (D. Mass. 1971); see Bradley v. City of Lynn, 403 F.Supp.2d 161, 165 n.1 (D. Mass. 2005) (court could not "infer that Title VII applied to the state as an 'employer' in [Beecher and Castro] because other civil rights laws were asserted and could have constituted the basis for liability"). Castro did not involve Title VII at all, and in Beecher it was the United States that raised the Title VII claims on behalf of minorities. See NAACP v. Beecher, 679 F.2d 965, 967-68 (1st Cir. 1982). Thus, Beecher only underscores the state defendants' position that, if anyone, only the United States Attorney General can seek Title VII relief against non-employer state agencies acting in a regulatory capacity. See 42 U.S.C. § 2000e-6(a) (giving the Attorney General the authority to seek an injunction against "any person" "engaged in a pattern or practice of resistance to the full enjoyment of rights secured by this subchapter") (emphasis added); State Defs.' Opening Br. at 36 n.16.

17

The rest of plaintiffs' discussion is even less helpful.  As to the <u>Boston</u> <u>Police</u> cases, plaintiffs merely note that the Commonwealth was named as a defendant in that action.  Pls.' Br. at 33-34.  Further, the decisions themselves do not even mention the Commonwealth, let alone explain what claims were asserted against it.  <u>Mass. Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't</u>, 106 F.R.D. 80 (D. Mass.), <u>aff'd</u> 780 F.2d 5 (1st Cir. 1985).

<u>Cotter v. City of Boston</u>, 73 F.Supp.2d 62 (D. Mass. 1999), is likewise irrelevant because, there, suit was brought under § 1983 alleging a violation of equal protection; thus, the meaning of "employer" under Title VII was not even tangentially at issue.  In addition, <u>Cotter</u> concerned the altogether different question of whether HRD was required, under state law, to apply bypass review to an employer's choice among candidates with tie scores.  <u>Id.</u> at 65-67.

Finally, the two state court decisions cited by plaintiffs, <u>Brackett v. Civil</u> <u>Service Commission</u>, 850 N.E.2d 533 (Mass. 2006), and <u>Pratt v. Dietl</u>, No. 09-1254 (located in Addendum to Pls.' Br.), also involved entirely different questions than those raised here.  <u>Brackett</u> concerned the issues of (1) whether HRD had a basis in state law for adopting a rule permitting special certifications, and (2) whether the employer (not HRD) could constitutionally use such certifications

to remedy its past history of discrimination.  850 N.E.2d at 539, 552-53.[5]  Pratt

concerned whether HRD violated its own regulations by deciding to band

examination scores without first engaging in rulemaking under the Massachusetts

Administrative Procedure Act.  See Pratt at 8-10.  Not only did these cases have

nothing to do with the definition of "employer" under Title VII, both in fact

support the state defendants' position that HRD acts only as a regulator with

respect to the promotions of police officers.  See Brackett, 850 N.E.2d at 552

("G.L. c. 31, § 3, states that the 'administrator [of the HRD] shall make and amend

rules which shall regulate the recruitment, selection, training and employment of

persons for civil service positions.'"); Pratt at 2 (similar).

> **D.    The Cases Relied on by Plaintiffs Invoke Some Variation of the
> Interference Theory of Liability, Which Cannot Be Applied to the
> States.**

As the state defendants anticipated in their opening brief, plaintiffs seek to

rely on the interference theory of liability, claiming that a non-employer State can

be sued under Title VII if it "exercises . . . control over the relationship between

---

[5]   HRD did not "admit[] [in Brackett] that its exams were discriminatory and,
therefore, it was justified in authorizing the governmental entities there to promote
based on race and gender."  Pls.' Br. at 48.  Rather, HRD had approved the use of
special certifications on the basis of the employer's "evidence of past racial
discrimination."  Brackett, 850 N.E.2d at 547; id. at 550-51 (Massachusetts Bay
Transportation Authority's past hiring shortfalls, not promotional-exam
deficiencies, permitted remedial action favoring women and minorities).

the employee and the customary employer."  Pls.' Br. at 40; see id. at 41 (State can

"be treated as an employer if it 'exercised control over an important aspect of the

employee's employment,' even if it did not control other aspects"); id. at 45 ("a

government entity [can be held] liable as an employer under Title VII if it

participates in the employment relationship in a significant manner and is guilty of

discrimination with respect to such participation").  Again, however, Congress

expressed no intent in Title VII to permit liability to be expanded against the States

in such a manner.  See State Defs.' Opening Br. at 31-46.  Thus, nearly every

circuit court to have addressed the issue has declined to adopt the rule proposed by

plaintiffs.  See id. at 43-46.

     The only circuit court case that supports plaintiffs' position is Association of

Mexican-American Educators v. California, 231 F.3d 572 (9th Cir. 2000)

("AMAE"), which, as previously explained, is both factually distinguishable and

legally incorrect.  See State Defs.' Opening Br. at 44-45.  Although plaintiffs also

seek to rely on the New Jersey line of cases, plaintiffs erroneously assert that the

State was held liable in those cases as a Title VII employer of municipal police

officers and firefighters.  See Pls.' Br. at 38-39, 46.  There, it was the United States

that asserted the Title VII claims against the State for allegedly engaging in a

"pattern or practice" of discrimination, 42 U.S.C. § 2000e-6(a), and the parties

entered into a consent decree (which contained no finding of discrimination) before

20

trial.  Vulcan Pioneers, Inc. v. N.J. Dep't of Civil Serv., 832 F.2d 811, 813 (3d Cir.

1987); United States v. New Jersey, 1995 WL 1943013, at *1-*2 (D.N.J. Mar. 14,

1995).  Further, in one of the New Jersey decisions cited by plaintiffs, the court

suggests that, even in cases brought by the United States, the real defendant in

interest is the municipal employer, not the State:

> The State Civil Service Commission does not have the "real authority" in hiring and promoting firefighters.  The Commission in preparing and supervising the written examinations merely plays an administrative role in the municipal hiring process.  It does no recruiting.  It makes no final employment decisions.  It only designs the written tests, insuring that they are objective and apolitical.  Rather, it is the cities themselves which make the final hiring and promotional decisions.  Such decisions are dependent upon written and physical criteria, as well as upon the financial conditions and manpower requirements of each municipality.

United States v. New Jersey, 473 F. Supp. 1199, 1207 (D.N.J. 1979).

Plaintiffs' reliance on Spirt v. Teachers Insurance and Annuity Association,

691 F.2d 1054 (2d Cir. 1982), is likewise misplaced.  See Pls.' Br. at 46 (citing

Spirt for proposition that statutory term "employer" can "encompass 'any party

who significantly affects access of any individual to employment opportunities'").

Spirt did not involve a state defendant, id. at 1057, and so applying the interference

theory there raised no Eleventh Amendment issue.  Moreover, in Gulino, the

Second Circuit expressed doubt whether Spirt was consistent with the Supreme

Court's later decisions in Reid and Clackamas, "both of which require adherence to

common law principles of agency in Title VII cases."  Gulino, 460 F.3d at 378.

21

Gulino therefore limited Spirt to the narrow situation "where an employer has delegated one of its core duties to a third party," making clear that "a broad application of the interference test is plainly inconsistent with traditional principles of agency law." Id. at 377-78.

The two other circuit court cases cited by plaintiffs are inconsequential because they did not involve state defendants. Plaintiffs flatly mischaracterize Guardians Association v. Civil Service Commission of the City of New York, 630 F.2d 79 (2d Cir. 1980), as "holding that state was properly held to be an employer pursuant to a Title VII challenge between municipal police department [sic]." Pls.' Br. at 46. The State, in fact, was not even named as a defendant in that case. Guardians, 630 F.2d at 82-83. Likewise, Owens v. Rush, 636 F.2d 283 (10th Cir. 1980), did not involve the State and held only that a county can be liable for acts committed by its "agent," i.e., a county sheriff. Id. at 286-87.

Finally, plaintiffs rely heavily on United States v. City of Yonkers, 592 F. Supp. 570 (S.D.N.Y. 1984), but that case does not help them for several reasons. First, plaintiffs once again overlook that, there, it was the United States that raised the Title VII claims, alleging that the State had engaged in a "pattern or practice" of discrimination. Id. at 572; see 42 U.S.C. § 2000e-6(a). Second, the court incorrectly assumed, without analyzing the constitutional implications, that the

22

interference theory could be applied against the State.  Id. at 590-91.[6]  Third, the

court relied on Spirt, which is not applicable to a state defendant, and, even if it

were, would be limited to the narrow situation "where an employer has delegated

one of its core duties to a third party."  Gulino, 460 F.3d at 377-78.  It is thus

doubtful that Yonkers is still good law because, there, "[the municipality did] not

completely delegate its selection process to the state by virtue of enlisting its aid on

the test."  592 F. Supp. at 591.  Rather, as in this case, the municipality had the

_____

[6]  The other district court cases cited by plaintiffs (with the exception of Curran v.
Portland Superintending School Comm., 435 F. Supp. 1063 (D. Me. 1977), which
did not involve a state defendant) also erroneously assume with no real analysis
that the interference theory can be applied against the States.  See Baranek v.
Kelly, 630 F. Supp. 1107, 1113 (D. Mass. 1986) (declining to dismiss State as
defendant, even though it "was not the plaintiffs' employer in the conventional
sense," based on faulty assumption that "[i]n order to effectuate the policies of
Title VII . . . liberal construction may be given to the term 'employer'"); EEOC v.
City of Evanston, 854 F. Supp. 534, 537-38 (N.D. Ill. 1994) (assuming, in case
brought by United States, that State could be liable under interference theory even
in "absence of a direct employment relationship" with plaintiffs); Barone v.
Hackett, 602 F. Supp. 481, 482-83 (D.R.I. 1984) (assuming with no analysis that
state agency could be held liable under interference theory even though it "did not
employ" plaintiff); Puntolillo v. N.H. Racing Comm'n, 375 F. Supp. 1089, 1092
(D.N.H. 1974) (assuming that State could be held liable for "discriminatorily
interfering with an individual's employment opportunities with another
employer").

23

authority to weigh other criteria, in addition to the test results, in selecting its employees.  Id.[7]

Plaintiffs have therefore failed to counter the great weight of authority cited in the state defendants' brief, holding that a Title VII action may not be brought against a State in the absence of a common-law employment relationship.  See State Defs.' Opening Br. at 43-46.  Although plaintiffs try to distinguish those cases on grounds that the state defendants there did not control "hiring,"  Pls.' Br. at 41-45, that distinction cannot stand given plaintiffs' concession that the municipal appointing authorities, and not the Commonwealth, "hire[] and pay[]" their police officers.  R.A. 114 ¶ 26, 175.  Moreover, as previously discussed, plaintiffs' approach only invites arbitrary application of Title VII, depending on each court's individual assessment of the extent of the State's regulation in any given field.  See State Defs.' Opening Br. at 38-39.  Their proposed approach would therefore "severely compromise the capacity of" the Commonwealth and its agencies "to figure out who their 'employees' are."  Darden, 503 U.S. at 327.  On the other hand, the common-law test, while "offer[ing] no paradigm of

_____

[7]  Here, the case for deeming the Commonwealth an "employer" is even weaker because municipal participation in HRD's promotional exam is entirely optional, see Mass. Gen. Laws ch. 31, §§ 9-11, and, as Boston has shown, a city who chooses to use HRD's exam can still have substantial input into its formulation. R.A. 103-04.

determinacy," "generally turns on factual variables within an employer's
knowledge, thus permitting categorical judgments about . . .'employee' status." Id.
Title VII contains no clear statement that any other test should govern, and so the
Eleventh Amendment bars plaintiffs' reliance on the interference theory of
liability.

### E.    Bradley and Carparts Do Not Apply to this Case.

The state defendants previously explained that Bradley, 403 F.Supp.2d 161,
is factually distinguishable because of the differences between HRD's entry-level
exams, which municipalities are required to use, and its promotional exams, which
municipalities may choose to use.  State Defs.' Opening Br. at 42-43.  Thus, even
were it proper to ignore the other common-law factors, which it is not, Bradley
does not affect the outcome here because HRD's role with regard to promotions is
not enough on its own to render HRD a Title VII employer.  Plaintiffs do not argue
otherwise in their brief and in fact conceded this point below.  R.A. 134-35.

Plaintiffs appear to claim, however, that Bradley found HRD to be an
employer with respect to all aspects of municipal police officers' employment.  See
Pls.' Br. at 38-40.  This is a vast overstatement of the holding; the court made clear
that it was finding HRD to be an employer "with respect to . . . entry-level hiring"
only.  Bradley, 403 F.Supp.2d at 169.  In fact, the court observed that, while HRD

25

"exercise[d] extensive control over hiring," it had "little control over other aspects of the employment relationship." Id. at 168.

Plaintiffs' reliance on Carparts Distributing Center, Inc. v. Automotive Wholesaler's Association of New England, Inc., 37 F.3d 12 (1st Cir. 1994), is puzzling. Carparts, which involved only private parties, refers to the "possibility" that, in some circumstances, a defendant who has sufficient control over one aspect of a plaintiff's employment can be deemed an employer with respect to that aspect only. Id. at 17-18. Here, plaintiffs have conceded that HRD does not have enough control over the promotional process to render it an employer with respect to just promotions. R.A. 134-35. Carparts' holding is therefore immaterial to this case.

To the extent plaintiffs are contending that HRD's alleged control over one aspect of their employment—i.e., their original hiring as opposed to the promotions they now seek—renders the Commonwealth an employer for all purposes, that argument should be rejected. See Pls.' Br. at 41 (implying that, under Carparts, so long as a State exercises control over one aspect of the employment relationship, it can be treated as an employer for all purposes "even if it did not control other aspects"). Any such argument would be entirely inconsistent with the settled principle that all the factors of the common-law test must be analyzed in determining whether an employment relationship exists. E.g., Camacho, 369 F.3d at 577; see State Defs.' Opening Br. at 40-41. Further, the rule

26

suggested by plaintiffs would know no bounds.  Under plaintiffs' approach the

Commonwealth could be sued as a Title VII employer any time it engages in

regulatory activity affecting any aspect of municipal police officers' employment,

even though its alleged control over the employment relationship ends once the

officers are hired.  For example, plaintiffs' approach might open the door for

municipal police officers to bring a Title VII action against the Civil Service

Commission every time it upholds a layoff or disciplinary decision made by a

municipal appointing authority.  <u>See</u> Pls.' Br. at 12.

This Court should refuse to go down such a "slippery slope."  <u>Camacho</u>, 369

F.3d at 578; <u>see</u> <u>AMAE</u>, 231 F.3d at 608 (Gould, J., concurring in part and

dissenting in part).  The Commonwealth and its agencies are entitled to know "who

their 'employees' are," and it is the common-law definition that provides that

degree of determinacy.  <u>Darden</u>, 503 U.S. at 327.  Again, nowhere in Title VII has

Congress even suggested that another definition should govern.  The Eleventh

Amendment therefore requires that the claims against the state defendants be

dismissed.

## **CONCLUSION**

For the above reasons and those set forth in the state defendants' opening brief, this Court should hold that the state defendants are entitled to Eleventh Amendment immunity; reverse that portion of the district court's April 7, 2009 order denying the state defendants' motion to dismiss under the Eleventh Amendment; and remand with instructions to dismiss all claims against the state defendants for lack of jurisdiction.

Respectfully submitted,

COMMONWEALTH OF
MASSACHUSETTS and PAUL DIETL, in
his capacity as Chief Human Resources
Officer of the Human Resources Division,

By their attorneys,

MARTHA COAKLEY
ATTORNEY GENERAL

_____
Sookyoung Shin, 1st Cir. No. 108199
Robert L. Quinan, Jr., 1st Cir. No. 70454
Assistant Attorneys General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2052 (Shin)
(617) 963-2554 (Quinan)
(617) 727-5785 (fax)
Date: September 10, 2009          sookyoung.shin@state.ma.us

28

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,582 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14-point Times New Roman style.

_____

Sookyoung Shin, 1st Cir. No. 108199

Attorney for COMMONWEALTH OF MASSACHUSETTS and PAUL DIETL, in his capacity as Chief Human Resources Officer of the Human Resources Division